**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| ATERALENE SNOW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>WORLD ACCEPTANCE CORP.,<br><br>Defendant. | Case No.: _______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ateralene Snow ("Plaintiff"), individually and on behalf of all others similarly situated, brings a class action complaint against Defendant World Acceptance Corporation ("Defendant" or "WAC") and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action against WAC for its failure to properly secure Plaintiff's and Class Members' personally identifiable information and personal financial information ("PII").

2. WAC failed to comply with industry standards to protect information systems that contain PII. Plaintiff seeks, among other things, orders requiring WAC to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure described herein (hereinafter referred to as the "Data Breach") in the future.

3. WAC is a consumer financial services provider that makes installment loans and sells tax preparation and filing services.

4. On or around August 24, 2026, WAC determined that an unauthorized outsider had gained access to its information technology systems. Its subsequent investigation determined that the PII of 232,401 individuals was exposed by the Data Breach.

5. As a business services provider, WAC knowingly obtained sensitive PII and had a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII to WAC if they had known that WAC would not ensure that it used adequate security measures.

6. Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII was exposed in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to WAC's data security policies and practices.

## PARTIES

7. Plaintiff Ateralene Snow is a citizen and resident of Gadsden, Alabama who has obtained a loan from WAC. Ms. Snow received a letter from WAC dated September 30, 2026, reflecting that her PII was exposed by the Data Breach.

8. Defendant World Acceptance Corporation is a South Carolina corporation with its principal place of business at 104 S. Main St., Greenville, South Carolina, 29601.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(C). There are at least 230,000 people in the class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs, and members of the proposed Class are citizens of states different from Defendant, including Plaintiff.

10. This Court has personal jurisdiction over Defendant because Defendant operates, conducts, and engages in substantial business in this judicial district.

11. Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District and pursuant to Local Civ. Rule 3.01 (D.S.C.) because, among other things, a substantial part of the events alleged in this complaint occurred within the Greenville Division.

## FACTUAL ALLEGATIONS

### Facts Related to the Data Breach

#### *Defendant's Business*

12. WAC is a consumer financial services provider. WAC, which does business as World Finance, claims that "[a]t World Finance, we put people first. We're not just here to provide the best personal loans and tax services we can. We're also here to serve our communities and help people thrive"[1]

13. WAC further claims that "[w]ith over 60 years of experience and branches across 16 states, World offers the stability of a large financial company and the trust of a neighborhood lender."[2]

14. WAC's services require its customers to entrust WAC with their sensitive PII.

15. WAC's business model depends on Plaintiff's and Class Members' willingness to trust WAC to protect their PII. In return, WAC's customers pay for its services, and WAC gets access to highly sensitive and valuable PII.

#### *The Data Breach*

[1] "World Finance," https://www.loansbyworld.com/about (last accessed Oct. 6, 2026).

[2] *Id.*

16. On or around August 24, 2026, WAC determined that an unauthorized outsider had gained access to its information technology systems.

17. WAC disclosed that, on or about September 8, 2026, it confirmed the names and addresses of its impacted customers and the nature of the impacted data which may have included customers' names, Social Security numbers and driver's license numbers.[3]

18. On September 30, 2026, WAC reported the Data Breach to the Maine Attorney General and added that it affected 232,401 people.

***WAC's Security Representations***

19. WAC made promises to keep Plaintiff's and Class Members' personal information safe. Its website includes a "Privacy Notice," which lists circumstances under which it may share its customers' PII.[4] None of those circumstances account for the disclosure of PII to hackers.

20. Its website also includes a "Privacy Policy," which includes a longer list of circumstances under which it may share its customers' PII.[5] Again, none of those circumstances account for the disclosure of PII to hackers.

**The Data Breach Was Foreseeable**

21. WAC was on notice that companies in the financial sector are susceptible targets for data breaches.

---

[3] "Notice of Data Security Incident," https://www.worldacceptance.com/notice-of-data-security-incident (last accessed Oct. 6, 2026).

[4] "Privacy Notice," https://www.loansbyworld.com/privacy-notice (last accessed Oct. 6, 2026).

[5] "Privacy Policy," https://www.loansbyworld.com/privacy-policy (last accessed Oct. 6, 2026).

22. According to the IBM Cost of a Data Breach 2025 report, the financial industry spent $6.08 million on average dealing with a data breach, the second highest amount not far behind the healthcare industry.[6]

23. CrowdStrike, a cybersecurity company, also found that out of the twenty-three sectors that they analyzed, the financial sector was the second largest targeted sector.[7]

24. It was foreseeable that WAC, as a company that maintains PII for business purposes, would be targeted by cyber intruders.

**WAC Derived a Benefit from its Security Representations**

25. WAC obtained and stored a massive amount of PII and other sensitive financial information. As a condition of engaging in business services, WAC and its affiliates required that customers entrust them with highly confidential PII.

26. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, WAC assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from disclosure.

27. WAC's security representations further demonstrate that WAC knew about its legal obligations. These representations also imposed obligations on WAC to keep those promises.

28. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members relied on WAC to keep this information confidential and securely maintained, and to make only authorized disclosures of their PII.

---

[6] IBM, Cost of a Data Breach 2025 12 (2025), https://www.ibm.com/reports/data-breach.

[7] CrowdStrike, 2025 Global Threat Report 21 (2025), https://go.crowdstrike.com/rs/281-OBQ-266/images/CrowdStrikeGlobalThreatReport2025.pdf?version=0 (last accessed Oct. 6, 2026).

**PII Is Valuable and Subject to Unauthorized Disclosure**

29. WAC was aware that PII collected by WAC is highly sensitive and of significant value to those who would use it for wrongful purposes.

30. PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft and financial fraud.[8] Indeed, a robust illegal market exists in which criminals openly post stolen PII on multiple underground websites, commonly referred to as the "dark web." Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner in case" a scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[9]

31. Financial information is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's financial conditions.

32. The ramifications of WAC's failure to keep Plaintiff's and Class Members' PII secure are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

33. Further, criminals often trade stolen PII for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

---

[8] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Oct. 6, 2026).

[9] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud- dark-web/ (last accessed Oct. 6, 2026).

34. WAC knew, or should have known, the importance of safeguarding PII entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. WAC failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring, which is evident from the fact that it took WAC seven (7) months to realize that there was a breach in its security systems.

**The Data Breach Exposed Plaintiff and Class Members to Identity Theft and Out-of-Pocket Losses**

35. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

36. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII, WAC's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII were reckless, or at the very least, negligent.

37. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of WAC's misfeasance.

38. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[10]

---

[10] 2025 LexisNexis True Cost of Fraud Study, https://risk.lexisnexis.com/insights-resources/research/us-ca-true-cost-of-fraud-study (last accessed Oct. 6, 2026).

39. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. invasion of privacy;

b. theft of their PII;

c. lost or diminished value of their PII;

d. lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

e. loss of the benefit of their bargain;

f. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

g. statutory damages;

h. nominal damages; and

i. the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in WAC's possession and is subject to further unauthorized disclosures so long as WAC fails to undertake appropriate and adequate measures to protect the PII.

**WAC Violated FTC Guidelines**

40. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited WAC from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of

the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

41. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[11]

42. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established data security guidelines for businesses.[12] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

43. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[13]

44. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting

---

[11] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Oct. 6, 2026) ("Start With Security").

[12] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Oct. 6, 2026).

[13] Federal Trade Commission, *Start With Security*, *supra*.

from these actions further clarify the measures businesses must take to meet their data security obligations.

45. WAC failed to properly implement basic data security practices. WAC's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

46. WAC was at all times fully aware of its obligation to protect Plaintiff's and Class Members' PII because of its position as a healthcare provider. WAC was also aware of the significant repercussions that would result from its failure to do so.

**Plaintiff's Experience**

47. Plaintiff Ateralene Snow is a resident of Gadsden, Alabama who has obtained a loan from WAC.

48. WAC obtained Ms. Snow's PII in the course of conducting its regular business operations.

49. At the time of the Data Breach, WAC retained Ms. Snow's PII.

50. Ms. Snow greatly values her privacy and is very careful about sharing her sensitive PII. Ms. Snow diligently protects her PII and takes proactive steps to ensure that her PII is kept safe and secure and stores any documents containing PII in a safe and secure location. Ms. Snow has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

51. WAC obtained and continues to maintain Ms. Snow's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

52. The Data Breach has caused Ms. Snow to suffer imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

53. As a result of the Data Breach, Ms. Snow is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

54. Ms. Snow has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in WAC's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

55. This civil action is properly maintainable as a class action pursuant to Rule 23 of the Rules of Civil Procedure. Plaintiff seeks certification of the following class:

All residents of the United States whose PII was compromised in the Data Breach.

56. Excluded from the Class are WAC, any entity in which WAC has a controlling interest, and WAC's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

57. Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

58. **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the number of individuals whose PII was exposed by WAC is at least in the tens of thousands. All Class Members' names and addresses are available from WAC's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

59. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent WAC had a duty to protect the PII of Class Members;

b. Whether WAC was negligent in collecting and storing Plaintiff's and Class Members' PII;

c. Whether WAC had duties not to disclose the PII of Class Members to unauthorized third parties;

d. Whether WAC took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e. Whether WAC failed to adequately safeguard the PII of Class Members;

f. Whether WAC failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

g. Whether WAC adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

h. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of WAC's wrongful conduct;

i. Whether Plaintiff and Class Members are entitled to restitution because of WAC's wrongful conduct;

j. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

60. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was disclosed by WAC. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through WAC's common misconduct. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

61. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against WAC to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

62. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because WAC has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. WAC's policies challenged herein apply to and affect Class Members

uniformly and Plaintiff's challenge of these policies hinges on WAC's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

63. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like WAC. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

64. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because WAC would necessarily gain an unconscionable advantage in non-class litigation, since WAC would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

65. The litigation of Plaintiff's claims is manageable. WAC's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members

demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

66. Adequate notice can be given to Class Members directly using information maintained in WAC's records.

67. Unless a class-wide injunction is issued, WAC may continue to maintain inadequate security with respect to the PII of Class Members, WAC may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and WAC may continue to act unlawfully as set forth in this Complaint.

68. WAC has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**<u>FIRST CLAIM FOR RELIEF</u>**
**NEGLIGENCE**
**(on behalf of Plaintiff and the Class)**

69. Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

70. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. As WAC stores vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access WAC's databases, whether by malware or otherwise.

71. PII is highly valuable, and WAC knew, or should have known, the risk in obtaining, using, handling, emailing, and storing Plaintiff's and Class Members' PII and the importance of exercising reasonable care to those ends.

72. WAC owed, and continues to owe, a duty of care to Plaintiff and Class Members to exercise reasonable and due care in obtaining, processing, retaining, securing, safeguarding,

deleting, and protecting Plaintiff's and Class Members' PII in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing WAC's security systems to ensure that Plaintiff's and Class Members' PII in WAC's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

73. WAC had a common law duty to prevent foreseeable harm to its customers. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but WAC also knew that it was more likely than not Plaintiff and Class Members would be harmed.

74. It was also foreseeable that WAC's failure to adequately safeguard their PII in accordance with industry standards for data security would result in the compromise of that PII. WAC acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII were stored, used, and exchanged, and those in its employ who were responsible for those actions.

75. WAC owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. WAC also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is directed at enabling Plaintiff and Class Members to take appropriate

measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other steps to mitigate the harm caused by the Data Breach.

76. Timely notification was required, appropriate, and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by WAC's misconduct.

77. WAC owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom WAC knew or should have known would suffer injury-in-fact WAC as a result of WAC's inadequate security protocols. WAC actively sought and obtained Plaintiff's and Class Members' PII.

78. WAC breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. WAC breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect Plaintiff's and Class Members' PII; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) disclose in a timely fashion that Plaintiff's and the Class Members' PII in WAC's possession had been or was reasonably believed to have been, stolen or compromised.

79. As a direct and traceable result of WAC's negligence and/or negligent supervision, Plaintiff and Class Members have suffered and will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

80. WAC's breach of its common-law duties to exercise reasonable care and negligence actually and proximately caused Plaintiff's and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by WAC's negligence. Those injuries-in-fact and damages are ongoing, imminent, immediate, and Plaintiff and Class Members continue to face them.

81. As a direct and proximate result of WAC's negligence, Plaintiff and Class Members have been injured as described herein and are entitled to damages in an amount to be proven at trial. Plaintiff and Class Members injuries include, but are not limited to, the following:

a. losing the inherent value of their PII;

b. losing the value of the explicit and implicit promises of data security;

c. identity theft and fraud resulting from the theft of their PII;

d. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

e. costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

f. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

82. Plaintiff and Class Members are also entitled to injunctive relief requiring WAC to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

**<u>SECOND CLAIM FOR RELIEF</u>**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiff and the Class)**

83. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

84. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as WAC of failing to use reasonable measures to protect PII.

85. WAC also had a duty under FTC Act, 15 U.S.C. § 45 to provide adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

86. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

87. WAC had a duty to Plaintiff and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII.

88. WAC violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. WAC's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on its systems, and WAC's experience with previous breaches.

89. WAC breached their duty to Plaintiff and Class Members under the FTC Act by failing to provide reasonable or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

90. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that,

because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

91. But for WAC's wrongful and negligent breach of duty owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

92. The injury and harm suffered by Plaintiff and Class Members were the reasonably foreseeable result of WAC's breach of its duty. WAC knew or should have known that WAC was failing to meet its duties and that the breach would cause Plaintiff and Class Members to suffer the foreseeable harms associated with the exposure of their PII.

93. WAC's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

94. As a direct and proximate result of WAC's negligence per se, Plaintiff and Class Members have suffered harm, including:

a. losing the inherent value of their PII;

b. losing the value of the explicit and implicit promises of data security;

c. identity theft and fraud resulting from the theft of their PII;

d. costs and time associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

e. costs and time associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

f. unreimbursed losses relating to fraudulent charges;

g. losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and

h. other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

95. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

96. Plaintiff and Class Members are also entitled to injunctive relief requiring WAC to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

## THIRD CLAIM FOR RELIEF
**Breach of Implied Contract**
**(on behalf of Plaintiff and the Class)**

97. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

98. WAC offered medical services to Plaintiff and Class Members. Then, Plaintiff and Class Members accepted WAC’s services and paid for those services. And when Plaintiff and Class Members paid for the services, they also provided their PII to WAC.

99. Thus, Plaintiff and Class Members entered implied contracts with WAC. And so, each paid service before and during the Data Breach was made under these mutually agreed-upon implied contracts with WAC.

100. Under those implied contracts, WAC agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if their information was compromised or stolen.

101. Plaintiff and Class Members would not have provided and entrusted their PII to WAC in the absence of an implied contract.

102. WAC materially breached the contracts it entered with Plaintiff and Class Members by:

a. Failing to safeguard and protect the PII of Plaintiff and Class Members.

b. Failing to promptly notify Plaintiff and Class Members of the Data Breach and the subsequent exposure and theft of their PII.

c. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement.

d. Failing to ensure the confidentiality and integrity of the electronic PII that WAC created, maintained, received, and transmitted.

103. The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of WAC's material breaches of its agreements.

104. Plaintiff and Class Members performed as required under the relevant agreement, or WAC's conduct resulted in the waiver of such performance.

105. All contracts include the covenant of good faith and fair dealing. Thus, all contracts impose on each party a duty of good faith and fair dealing. That duty encompasses the following:

a. The parties must act with honesty in fact in the conduct or transactions concerned.

b. The parties must act with good faith and fair dealing when executing contracts and discharging performance and other duties according to their terms so as to preserve the spirit, and not merely the letter, of the bargain.

c. The parties are mutually obligated to comply with both the substance and form of their contracts.

106. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct is justified. Bad faith may be overt or may consist of inaction. And fair dealing may require more than honesty.

107. In this case, WAC failed to advise Plaintiff and Class Members of the Data Breach promptly. In these and other ways, WAC violated its duty of good faith and fair dealing.

108. WAC, through numerous material breaches of the implied contracts, injured both Plaintiff and Class Members and sustained actual losses and damages as described above, including that they did not get the benefit of the bargain for which they paid for.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class)**

109. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

110. This claim is pled in the alternative to Plaintiff's claim for breach of implied contract.

111. Plaintiff and Class Members conferred benefits upon WAC in the form of payments. In addition, WAC benefited from receiving Plaintiff's and Class Members' PII and from its ability to retain and use that information. Such data is used to facilitate both payment and the provision of services. For instance, by retaining Plaintiff's and Class Members' PII, WAC could offer continued service for a patient visiting more than one time, and not have to ask patients to provide medical history information over and over again. This time saving measure creates additional value for patients and incentivizes them to use WAC's services again.

112. WAC also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential and its value depended upon WAC maintaining its privacy and confidentiality.

113. WAC appreciated or knew of the benefits that it received. Under principles of equity and good conscience, the Court should not allow WAC to retain the full value of these benefits, specifically, Plaintiff's and Class Members' payments and PII.

114. But for WAC's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted to WAC. Further, if WAC had disclosed that its data security measures were inadequate, WAC would not have been permitted to continue in operation by regulators and its customers.

115. As a result of WAC's wrongful conduct as alleged in this Complaint (including, among things, its knowing failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII), WAC has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members. WAC continues to benefit and profit from its retention and use of the PII while its value to Plaintiff and Class Members has been diminished.

116. WAC's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

117. Under the common law doctrine of unjust enrichment, it is inequitable for WAC to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class Members in an unfair and unconscionable manner. WAC's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

118. The benefit conferred upon, received, and enjoyed by WAC was not conferred officiously or gratuitously, and it would be inequitable and unjust for WAC to retain the benefit.

119. WAC is therefore liable to Plaintiff and Class Members for restitution in the amount of the benefit conferred on WAC as a result of its wrongful conduct, including specifically the value to WAC of the PII that was stolen in the Data Breach and the profits WAC is receiving from the use of that information.

120. WAC should be compelled to disgorge into a common fund, for the benefit of Plaintiff and Class Members, all funds that it unlawfully or inequitably WAC obtained as a result of its misconduct and the resulting Data Breach.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

b. for equitable relief enjoining WAC from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c. for equitable relief compelling WAC to use appropriate cybersecurity methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class Members the types of PII compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 7, 2026

Respectfully submitted,

s/ *Caleb M. Hodge*
Nina Fields Britt (SCBN 68294; Fed. ID # 7924)
Caleb M. Hodge (SCBN 104874; Fed. ID #13465)
**ROGERS, PATRICK, WESTBROOK & BRICKMAN, LLC**
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
(843) 727-6500 Telephone
(843) 216-6509 Facsimile
nfields@rpwb.com
chodge@rpwb.com

Bart D. Cohen (*pro hac vice to be filed*)
Panida A. Anderson (*pro hac vice to be filed*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com
panderson@baileyglasser.com

David D. Bibiyan (*pro hac vice to be filed*)
Younjin (Jennifer) Lee (*pro hac vice to be filed*)
**BIBIYAN LAW GROUP, P.C.**
1460 Westwood Boulevard
Los Angeles, California 90024
Telephone: (310) 438-5555
david@tomorrowlaw.com
jlee@tomorrowlaw.com

*Counsel for Plaintiff and the Proposed Class*